REGINA *vs.* HENRY F. POOR.

Motion to Quash Indictment.

Hearing, September 5, 1892.   Decision, October 15, 1892.

Judd, C.J., Bickerton and Dole, JJ.

An Indictment was signed " H. A. W., Attorney-General *ad interim,* by his Deputy, C. C."

Held, that since under the Constitution of 1887 the tenure of a Cabinet officer is not at the pleasure of the Sovereign, but it is terminable only on the passage of a vote of Want of Confidence by the Legislature, and since the laws requiring Cabinet majorities for certain legal acts would be subverted by an *ad interim* appointment, the Indictment is bad, on a motion to quash.

*Rex vs. Kanaau,* 3 Hawn., 669, and

*Rex vs. Ah Lin,* 5 Hawn., 59, distinguished.

Opinion of the Court, by Dole, J.

The indictment in this case is signed, " H. A. Widemann, Attorney-General, *ad interim,* by his Deputy, Chas. Creighton." The prisoner moved to quash the indictment, because "it is presented by an officer not known to or authorized by the Con-

stitution or Laws of the Hawaiian Islands, and that the said indictment is not presented by an officer having legal or constitutional authority to present the same."

The cases of *Rex vs. Kanaau*, 3 Hawn., 669, and *Rex vs. Ah Lin*, 5 Hawn., 59, are referred to as having settled the law of this question against this motion. The prisoner's counsel, however, contends that as the tenure of office of Cabinet Ministers under the Constitution is different from their tenure of office as it existed under the Constitution of 1864, which was the fundamental law when those cases were adjudicated, they are not necessarily authoritative in the present question.

Under the Constitution of 1864, the Ministers held "office during His Majesty's pleasure," and the King might and did appoint and dismiss them according to the whim of the moment. It was fully within his powers to appoint a temporary Minister, because he could cancel any Ministerial commission whenever he wished. Under the present fundamental law, however, while the Sovereign may appoint a Minister, he may not remove one without a legislative vote of want of confidence against him or his conviction of felony. The Sovereign, therefore, has now no power to appoint a temporary Minister, or a Minister *ad interim*, such a term involving the theory of inherent power existing in the Sovereign to recall the commission of a Minister.

This view is consistent with the reasoning of the Court in *Rex. vs. Kanaau*, above referred to. An indictment signed by an *Ad Interim* Attorney-General was sustained on the ground that "the office of the Attorney-General is one which is held during the King's pleasure, is not appointable for any certain time or for life ; and the words *ad interim* are not in any way different in effect from 'during the King's pleasure ;' they are added for the purpose of indicating to all persons that the appointment is merely temporary." As the words "during the King's pleasure" are not now in the Constitution, this reasoning of *Rex vs. Kanaau* has therefore no application to the present case.

The question then naturally arises, what is the effect of a commission appointing an Attorney-General *ad interim?* Does it result in a permanent appointment of an Attorney-General, or is it void?

Although a respectable argument could be made in favor of the former conclusion, the reasons against it are very strong. There is no such office known to the written law as an *ad interim* Minister, and a royal commission may not play fast and loose with official titles fixed by statute inconsistently with the legal tenure of office. Such irregularities are dangerous, and inconsistent with the constitutional safe-guards of official integrity and independence. For instance, if the appointment of one as Attorney-General *ad interim* should be construed as a permanent appointment, similar commissions might become common, and containing this vague evidence of an implied agreement between the officer and the Crown, that the former would resign at the request of the latter, which perhaps few men would have the courage to ignore, would thus to a certain extent tend to evade the constitutional provision against removal of Ministers by the Sovereign. Such an attempted modification of the constitutional tenure of office of a Minister by the Crown cannot be passed over or confirmed by the Court, whose responsible duty it is to guard the Constitution from legislative or official attack.

The importance of this aspect of the question before the Court may be illustrated by supposing a vacancy in the Supreme Court, where the tenure of office is during good behavior, to be filled by a person commissioned as Justice of the Supreme Court *ad interim*, or for three months, or during Her Majesty's pleasure. Could such an open defiance of constitutional provisions be tolerated or such a commission be recognized?

There is another aspect of this question which has been referred to in the argument, and which was passed upon by the cases cited; and that is the circumstance that the person holding the disputed commission was also holding at the time a regular commission as Minister in another department. The cases referred to decided that such a practice was sound. Without going into the question of the correctness of their conclusions upon this point under the then existing law, we find that since those cases were settled there has been a material change in the status and duties of Cabinet Ministers. Article 78 of the Constitution

requires that Sovereign acts shall be done by the Sovereign "with the advice and consent of the Cabinet." The Supreme Court, in an opinion rendered to the Cabinet, April 10, 1890, decided that the action of a majority of the four members of the Cabinet is the action of the Cabinet, except in those cases where the statute requires unanimity. The law of 1887, providing for the appointment of District Justices, requires that the Cabinet, or a majority of its members, submit nominations for such appointments to the Supreme Court. The Act of 1888, to promote the building of steam railroads in Oahu, provides that a majority of the members of the Cabinet shall pass upon the plans and charts for such railroads. The concurrence of all of the Cabinet is required both in the present and the preceding Constitution for the appropriation of public moneys by Privy Council, and similar unanimity is required in several existing statutes.

We thus see that the argument in favor of the legal necessity of having the four Cabinet positions filled by four individuals instead of a lesser number through one person holding several appointments, is stronger now than it was when the cases referred to were decided in 1876 and 1883. It needs no argument to show that the rule requiring Cabinet majorities for certain legal acts of the Cabinet would be subverted by a practice which allowed one individual to hold more than one ministerial commission. The same would also be true in regard to the laws and constitutional provisions requiring ministerial unanimity.

If the point is once conceded that one individual may legally hold two ministerial positions, there is no principle in the way of his holding three or all of them. This somewhat extreme proposition fairly exhibits both the absurdity and the evil tendency of the practice objected to.

We are, therefore, of the opinion that the commission to Mr. Widemann as Attorney-General *ad interim* was illegal, and allow the motion to quash the indictment presented by virtue of it.

*Deputy Attorney-General Creighton* and *F. M. Hatch,* for the Crown.

*A. S. Hartwell,* for defendant.