GEO. U. HIND, C. A. SPRECKELS, RUDOLPH SPRECK-
ELS, G. WEMPE, WILLIAM CARSON, H. D. BEN-
DIXEN, JAS. H. NELSON, M. C. SIVERSON, F. O.
JOHANSEN, GEO. A. NELSON, M. J. McLEOD, G.
M. FAGERLUND, J. S. HELLINGSEN, JOHN PILTZ
and HENRY M. WETHERBEE v. WILDER'S STEAM-
SHIP COMPANY.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 10, 1902.        DECIDED MAY 29, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

*Semble,* that one Circuit Judge may sign a decree in conformity with
an opinion filed by another judge of the same circuit who has gone
out of office.

*Semble,* that a void decree is appealable.

If the Supreme Court entertains without objection an appeal from a decree signed without objection by one Circuit Judge upon the decision of another, its decree cannot afterwards be set aside on motion as void, assuming that the decree appealed from was improperly signed by a different judge from the one who heard the case.

A statute is not repealed though expressed to be repealed by a later statute, if the latter is void.

There cannot be a *de facto* officer unless there is a *de jure* office.

If there is a *de jure* office, there may be a *de facto* officer however invalid his appointment.

There may be a *de facto* officer even though the office is already filled by a *de jure* officer, if the latter is not in possession of the office.

There are not two offices in the case of each Circuit Judge—that of Circuit Court and that of Circuit Judge in Chambers. There is but one office, that of Circuit Judge, though certain of his powers are exercised in Circuit Court and others in Chambers.

Acts 23 and 67 of the laws of 1898, the latter purporting to repeal the former, each provided for the appointment by the President of the Republic, without the consent of the Senate, of a person to perform the duties of a Circuit Judge during the latter's temporary disability or absence. The President appointed certain persons to act in the places of the First and Second Circuit Judges of the First Circuit during the latter's illness. The special judges performed the duties of the offices with the acquiescence of all concerned during the illness of the regular judges. One of the special judges heard a case in admiralty and filed his decision. The other signed a decree in conformity with that decision. The case was appealed and a decree entered in the Supreme Court slightly modifying that of the lower court. Five terms afterwards a motion was made to set aside the decree of the Supreme Court on the ground that the decision and decree of the special judges were void. Held,

Assuming that Acts 23 and 67 were unconstitutional because the appointments therein provided for were not to be made with the approval of the Senate, that decrees absolutely void may be set aside at terms subsequent to those at which they are rendered, and that the consent of the parties cannot invest persons with judicial power, still the special judges were judges *de facto* and their decrees cannot be thus attacked collaterally.

The result would be the same if, assuming those Acts to have been valid before the annexation of these islands to the United States, they were rendered invalid by the Joint Resolution of annexation (after which the appointments were made and decrees rendered), and if such power of appointment as the President of Hawaii had before annexation was not continued in him afterwards either by the Joint Resolution or by the direction of the President of the United States, although in our opinion such power was so continued in him.

*Semble,* that color of appointment or of authority to appoint is not necessary to constitute one a *de facto* officer.

### OPINION OF THE COURT BY FREAR, C.J.

This is a motion by the libellee to vacate a decree in admiralty entered in this court five terms ago. A Circuit Judge after a hearing of the case on its merits rendered a decree for the libellants. The case was appealed to this court which also entered a decree for the libellants slightly modifying the decree appealed from. 13 Haw. 112, 174. This court declined to allow an appeal to the United States Circuit Court of Appeals for the Ninth Circuit. *Id.* 174. That court also declined to allow such appeal. 108 Fed. R. 113. The Supreme Court of the United States declined to compel that court to entertain such appeal. *Wilder's S. S. Co.,* 22 Sup. Ct. Rep. 225. In two other suits in admiralty, against the same libellee, arising out of the same collision, heard for the most part upon the same evidence, in the District Court of the United States for Hawaii, a decree was rendered for the libellants and affirmed on appeal by the United States Circuit Court of Appeals for the Ninth Circuit. *Wilder's S. S. Co. v Low,* 112 Fed. R. 161.

The libellee now moves this court to set aside its decree on nine grounds.

The first four of these—which raise the question of the admiralty jurisdiction of the Circuit Judges and of this court respectively as to suits begun after the annexation of these islands to the United States but before the Organic Act took effect—are now abandoned in view of the above mentioned

decisions of the United States Supreme Court and the Circuit Court of Appeals.

The ninth ground, which is the general one that the decree is null and void, raises no questions that are not raised by the others.

The seventh ground (not very much relied on) is that the decree of the Circuit Judge appealed from was void because it was signed by a different judge from the one who heard the cause and filed the opinion. The judge who heard the cause and filed the opinion had gone out of office and another judge of the same circuit then signed the decree. The decree was not questioned as to its validity in this respect in the court below but on the contrary was indorsed "approved as to form" by counsel for the libellee. Nor was the question suggested in this court on the appeal. It is not disputed now that the decree conformed to the opinion.

The question whether a bill of exceptions may be settled and allowed by a successor in office to the judge who tried the case has often arisen and is one in regard to which there is much difference of opinion, but the question as to whether a decree drawn in conformity with an opinion of one judge may be signed by another judge has seldom arisen. The case which, so far as our observation has gone, comes nearest to the present case, *Ruckman v. Decker*, 27 N. J. Eq. 244, strongly supports the view that a judge may sign a decree in conformity with an opinion filed by his predecessor in office. But it is unnecessary for us to definitely decide that question. In our opinion the signing of the decree by another judge, if an error at all, was one that it is now too late for the libellee to take advantage of under the circumstances. The decree now in question is the decree of this court, not that of the Circuit Judge. The jurisdiction of this court to enter such a decree in such a case is unquestioned. The decree of this court can be set aside, if at all, on this ground only on the theory that this court was without jurisdiction to entertain the appeal from the decree of the Circuit Judge because that decree was void.

There is much difference of opinion as to whether a void decree is appealable or not, with, perhaps, the weight of authority in favor of the view that it is appealable. But, however that may be, assuming that the Circuit Judge who heard the case and filed the opinion had jurisdiction, the libellee cannot now have the decree of this court set aside on the ground that the decree appealed from was signed by a different judge. This court was not wholly without jurisdiction to entertain the appeal in such a sense as to render its decree void. In a certain sense an appellate court is without jurisdiction to entertain an appeal whenever the statutory requirements of an appeal have not been complied with, as when a proper appeal bond has not been filed, or costs have not been paid, &c., but such non-compliance cannot be taken advantage of after the case has been heard and determined by the appellate court. So in a certain sense the appellate court would not, in the absence of statutory authority, have jurisdiction to entertain an appeal from an interlocutory order or decree or from a mere opinion as distinguished from the final decree, and yet, if it did entertain such an appeal without the question being raised, its decree could not be set aside or questioned afterwards on that ground. The decree on appeal in this case is no more assailable now than it would be if the appeal had been taken from the decision of the judge who heard the case instead of from the decree of the other judge or if it had been taken from an interlocutory order or if it had not been taken within the time prescribed by the statute. See *Washington Bridge Co. v. Stewart*, 3 How. 413; *Coleman v. Coleman*, 5 Haw. 300; *Barthrop v. Kona Coffee Co.*, 10 Haw. 398; *Spooner v. Rice*, 11 Haw. 427; *Estate of Kamakala*, 12 Haw. 262; *Un Wo Sang Co. v. Alo*, 7 Haw. 673.

The remaining three grounds on which the motion is based are to the effect that neither the judge who heard the case nor the judge who signed the decree had jurisdiction in the matter—for the reason that each was acting as a special judge in the place of a regular judge under an appointment made under

a void statute. The arguments and briefs upon this point are very elaborate and refer to a large number of cases. It will not be necessary for us to consider at length all the points raised.

The appointments were made, the cause heard; the decree signed, and the appeal to this court taken before the establishment of the Territorial government although after the annexation of these islands to the United States. We shall consider the question first with reference to the Constitution and laws of Hawaii unaffected by annexation.

The Constitution of the Republic (1894) provided (Art. 26, Sec..1) that, "The President, with the approval of the Senate, shall appoint * * * the Judges of the Supreme and Circuit Courts * * *," and (Art. 26, Sec. 2) that, "In case a vacancy in any such office shall occur while the Senate is not in session, the President may fill such vacancy by granting a commission which shall, unless confirmed, expire at the end of the next session of the Senate," and (Art. 82) that, "The Judicial Power of the Republic shall be vested in one Supreme Court, and in such Inferior Courts as the Legislature may, from time to time establish," and (Art. 84) that, "The Judicial Power shall be divided among the Supreme Court, the Justices thereof, and the several Inferior Courts of the Republic in such manner as the Legislature may, from time to time, prescribe; and the tenure of office of the Judges of the Inferior Courts shall be such as may be fixed by the law creating them." The legislature created five Circuit Courts by the Judiciary Act of 1892 (Civ. L. Sec. 1136) and provided in the same Act (Civ. L. Sec. 1137) that, "The Circuit Court of the First Circuit shall consist of two Judges, who shall be styled First and Second Judges respectively of the Circuit Court of the First Circuit, either of whom may hold the court." The same Act defined the jurisdiction of the Circuit Courts (Civ. L. Sec. 1144) and of the Circuit Judges in Chambers (Civ. L. Sec. 1145) respectively. By Act 67 of 1898 it was provided that, "In case of the temporary disability or absence from the country of any Circuit Judge, some other person may be appointed by the President to perform the duties of the office while such disability or ab-

sence continues.  The commission of every such person so appointed may be revoked at any time by the President at his discretion."  This Act is in the same language as Act 23 of the same session and was passed because of a slight error in the title of Act 23.  If it is void because not approved until the day (July 7, 1898) on which the Joint Resolution of Annexation was approved by the President of the United States although five weeks before the actual transfer of sovereignty (August 12, 1898) the prior Act (23) although in terms repealed by the later (67) would, we presume, remain in force if otherwise valid. Purporting to act under the authority of one of these statutes the President of the Republic on the 9th of March, 1900, appointed R. D. Silliman Acting Second Circuit Judge of the First Circuit, and on the 7th of May following appointed Geo. A. Davis Acting First Judge of the same circuit.  In each instance the appointment was made because of the temporary disability, through illness, of the regular judge.  Judge Silliman acted as Second Judge until May 3, 1900; Judge Davis, as First Judge until June 4, 1900, the day on which the Organic Act took effect.  Judge Silliman after a hearing decided the case, May 1, 1900, two days before he went out of office.  Judge Davis signed the decree on the day of his appointment.

We will assume for the purposes of this case that, although courts cannot as a rule set aside their judgments or decrees after the term at which they are rendered, they may do so in cases of absolutely void judgments or decrees; also that consent, shown either by acquiesence or by the filing of a written stipulation that the special judge might hear the case, as was done here, could not invest one with judicial power; also that there was no vacancy in the office of either the First or the Second Judge such as could be filled during the period in question by the action of the President alone without the approval of the Senate under Article 26, Section 2, of the Constitution; also that the act of the special judges in question may be attacked collaterally if those judges were mere intruders and not at least *de facto* judges.  It is conceded that if they were *de facto* judges their acts must be upheld in this case as those of *de jure* judges.  We

will assume also that Acts 23 and 67 were unconstitutional for the reason that the appointments therein provided for were to be made by the President alone without the approval of the Senate, although there are decisions by a number of State courts which seem to support the opposite view, even when the courts in question are constitutional courts, and still others that, although not supporting that view when the courts are constitutional courts, support it when, as was perhaps the case with the Circuit Courts here at the time in question, the courts are legislative courts. (At present under the Organic Act, Sec. 81, the Circuit Courts may, perhaps, be regarded as constitutional courts, and the Circuit Judges are appointed by the President of the United States with the advice and consent of the Senate, under section 80 of the Organic Act.)

It is conceded that if there were offices to be filled, the special judges would be *de facto* officers, notwithstanding the unconstitutionality of Acts 23 and 67 under one of which the appointments were made, if those Acts provided for appointments only; in other words, that there may be a *de facto* officer, however invalid his appointment, if there is a *de jure* office to be filled, but it is contended and we think that the contention is sound, that there cannot be a *de facto* officer unless there is a *de jure* office. There cannot be *de facto* office. If the office does not exist except as created by the Acts in question, it cannot exist at all, even *de facto*, if the Act is unconstitutional, for an unconstitutional act is absolutely void and of no effect. But if the office exists *de jure*, its duties may, on grounds of public policy, be performed by a *de facto* officer.

It is argued that past legislation and judicial decisions show conclusively that there are two classes of courts in the various circuits, namely, Circuit Courts and Circuit Judges in Chambers; that consequently there are two distinct offices,—that of Circuit Court and that of Circuit Judge in Chambers; that in the circuit in question the two offices of the Circuit Court were filled by the two regular Circuit Judges respectively, and the two offices of Circuit Judge in Chambers were also filled by the same two regular Circuit Judges; and therefore that, if the

special judges in question could have been appointed at all, it must have been because two new offices were created for them to fill, but that no new offices were created by Act 23 or Act 67; since those Acts provided for appointments only.

We agree with counsel that the intention was merely to provide for the appointment of persons to temporarily occupy the offices already created by law and not to create new offices, either of the same or different grade.

But in our opinion there were not for the purposes of this case two distinct classes of offices or two distinct offices in the case of each judge—those of the Circuit Court and those of the Circuit Judges in Chambers. It is true, the jurisdiction of Circuit Courts and of Circuit Judges in Chambers is distinct and clearly defined, and for certain purposes or in certain senses the Circuit Courts and the Circuit Judges in Chambers may be regarded as distinct courts,—and for that matter there may be a further subdivision of the Circuit Courts into civil, criminal, divorce, &c., courts, and of the Circuit Judges in Chambers into equity, probate, &c., courts, and as the Circuit Judges perform various other than strictly judicial functions, they may perhaps in a certain sense be said to hold various other offices. But for the purposes of the present case there was but one office in the case of each judge—that of Circuit Judge or, more formally speaking, that of the First and that of the Second Judge of the Circuit Court of the First Circuit. The Constitution spoke only of Judges of the Circuit Courts. Art. 26, Sec. 1. The statute likewise, in the sections referring to the Circuit Courts and the Circuit Judges in Chambers, speaks only of Judges of the Circuit Courts. A person is not appointed Circuit Court or Circuit Judge in Chambers. He is appointed Circuit Judge, and then his powers and duties and the times and conditions under which he may exercise or perform them are defined. He exercises certain powers or jurisdiction when sitting in Circuit Court and others when sitting in Chambers. Although there was nothing in the Constitution or statutes expressly requiring or permitting the same person to be appointed to both the alleged office of Circuit Court and that of Circuit

Judge in Chambers, still, different persons could not have been appointed to those two alleged offices—for the reason that they did not exist. There was only one office—that of Circuit Judge.

But does it make any difference whether there were two classes of offices or not? In either case, the office could be filled by a *de jure* or a *de facto* officer. The question of importance is whether there could be a *de facto* and a *de jure* officer at the same time, that is, whether, in the proposition that there can not be a *de facto* officer without a *de jure* office to be filled, the emphasis is on the words *"de jure office"* or on the words "to be filled." It would seem on principle that, if there is a *de jure* office there may be a *de facto* officer when the invalidity of his appointment is due to the fact that some one else has been properly appointed as well as when it is due to the fact that he himself has been improperly appointed; and the authorities seem to support this view. Not, indeed, that the office may be actually occupied and its duties performed at the same time by both a *de jure* officer and a *de facto* officer, but that a *de facto* officer may be in possession of the office while a *de jure* officer is in existence though not in possession of the office, as was the case here.

When referring to the authorities let us bear in mind that the question of the validity of the appointment of these special judges or the question of their authority to act was not raised in this case or in any other case until by the present motion filed more than a year and a half after this case was heard and decided by those judges; that they acted as Circuit Judges in the undisturbed possession of their offices both in the Circuit Court and in Chambers during their whole terms, trying many cases; that the validity of the statutes under which they were appointed had never, so far as appears, been openly questioned; and that during the periods now in question the regular judges did not attempt to act but on the contrary acquiesced in the actions of the special judges. Although the regular judges had the titles to the offices they were not in possession of the offices. The special judges alone were in possession and their right to perform the duties of the offices was acquiesced in by every one.

The case relied on most by the movant is that of *Norton v. Shelby County*, 118 U. S. 425. That case may easily be distinguished from this. There the legislature of Tennessee had attempted to create an entirely new body, a board of commissioners, and to confer upon it the powers which under the constitution belonged solely to what was called the county court, which was composed of the justices of the peace acting collectively. Not only did the statute purport to create the new offices as well as provide for the appointment of the officers but the justices of the peace continued in office claiming the exclusive right to exercise the powers in question and immediately brought direct proceedings to enjoin the commissioners from acting, pending which proceedings the action of the commissioners which was called in question was taken. The Supreme Court of the United States followed the decision of the Supreme Court of the State in holding that there were no *de jure* offices and that therefore the commissioners were not *de facto* officers. The Court went on to say that, "Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is enough that he is clothed with the insignia of the office, and exercises its powers and functions." The court proceeded to refer with approval to three other cases very analogous to the case now before us, in each of which an officer had been appointed under an act of the legislature in a manner contrary to the constitution, to act in the place of an absent or ill regular officer, and in each of which the office was already filled by a regular officer, and in each of which the special officer was held to be a *de facto* officer. The court said:

"The case of *The State v. Carroll*, 38 Conn. 449, decided by the Supreme Court of Connecticut, upon which special reliance is placed by counsel, and which is mentioned with strong commendation as a landmark of the law, in no way militates against the doctrine we have declared, but is in harmony with it. The case was this: The constitution of Connecticut provided that all judges should be elected by its general assembly. An act of the legislature authorized the clerk of a city court, in case of the sickness or absence of its judge, to appoint a justice of the peace

15-D

to hold the court during his temporary sickness or absence. A justice of the peace having thus been called in and having acted, a question arose whether the judgments rendered by him were valid. The court held that whether the law was constitutional or not, he was an officer *de facto*, and, as such, his acts were valid. The opinion of Chief Justice Butler is an elaborate and admirable statement of the law, with a review of the English and American cases, on the validity of the acts of *de facto* officers, however illegal the mode of their appointment. It criticises the language of some cases that the officer must act under color of authority conferred by a person having power, or *prima facie* power to appoint or elect in the particular case; and it thus defines an officer *de facto*:

'An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised:

'First. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

'Second. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond or the like.

'Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public.

'Fourth. Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.

"Of the great number of cases cited by the Chief Justice none recognizes such a thing as a *de facto* office, or speaks of a person as a *de facto* officer, except when he is the incumbent of a *de jure* office. The fourth head refers not to the unconstitutionality of the act creating the office, but to the unconstitutionality of the act by which the officer is appointed to an office legally existing. That such was the meaning of the Chief Justice is apparent from the cases cited by him in support of the last position, to some of which reference will be made. One of them,

*Taylor v. Skrine,* 3 Brevard, 516, arose in South Carolina in 1815. By an act of that State of 1799, the governor was authorized to appoint and commission some fit and proper person to sit as judge in case any of the judges on the circuit should happen to be sick, or become unable to hold the court in his circuit. A presiding judge of the court was thus appointed by the governor. Subsequently the act was declared to be unconstitutional, and the question arose whether the acts of the judge were necessarily void. It was held that he was a judge *de facto* and acting under color of legal authority, and that as such his acts were valid. Here the judge was appointed to fill an existing office, the duties of which the legal incumbent was temporarily incapable of discharging. Another case is *Cooke v. Halsey,* in 16 Pet. 71. It there appeared that, by the constitution of Mississippi, the judges and clerks of probate were elected by the people. The legislature provided by law that, in case of the disability of the clerk, the court might appoint one. An elected clerk having left the State for an indefinite period, the judge appointed another to serve during his absence. The law authorizing the appointment was declared unconstitutional, but the acts of the clerk were deemed valid as those of an officer *de facto.* Here the office was an existing one created by law."

To the same effect see *Ex parte Strang,* 21 Oh. St. 610, in which a judge appointed during the illness of the regular judge under an unconstitutional statute was held to be a *de facto* judge. See also *State v. Lavik,* 83 N. W. (Neb.) 914.

In *Walcott v. Wells,* 21 Nev. 47, there was one court with three judges. The legislature provided for an additional judge and authorized the governor to appoint him until the next general election. Chief Justice Hawley, now United States District Judge, in a careful opinion reviewed most of the cases referred to above and other cases and held that, conceding the act to be unconstitutional, the judge was nevertheless a *de facto* judge. He used the following besides other language pertinent to the contention of counsel in the present case: "But petitioner contends that respondent is not a *de facto* officer, that the conditions necessary to constitute such an officer do not exist, that there is no office to be filled, that it is a legal impossibility for a fourth judge to fill the office of district judge, 'because the office has

always been full,' and that for these reasons the rule above stated has no application to this case. We admit that there can be no officer, either *de jure* or *de facto*, if there be no office to fill; that an office attempted to be created by an unconstitutional law has no legal existence, is without any validity, and that any persons attempting to fill such a pretended office, whether by appointment or otherwise, is a usurper, whose acts would be absolutely null and void, and could be questioned by any private suitor, in any kind of an action or proceeding." But "the case comes clearly within the principle of law as stated in the three cases (the Connecticut, South Carolina and Ohio Cases) above quoted from or referred to. In those cases the office was full. There was no vacancy. The law authorizing the appointment of a temporary judge had either been declared unconstitutional, or, for the purpose of the decisions, admitted to be unconstitutional. The temporary judge acted in the place of the judge *de jure*, under color of authority derived from an unconstitutional statute by virtue of his commission, etc. Here the respondent did not take the place of either of the three other judges, for there was no separate place for either to fill, except by the assignment of the presiding judge * * *. He acted as a district judge, filled the office, and presided in court, under as much color of authority as either of the temporary judges in the cases referred to. Why should not the same shield of protection to the public be given to his acts?"

On this branch of the case it remains only to consider whether we are not bound to hold the other way by a former decision of this court rendered in the case of *Regina v. Poor*, 8 Haw. 521. An indictment for embezzlement was presented by one claiming to act as Attorney-General *ad interim*. The defendant immediately moved to quash the indictment on the ground that it was presented by an officer not known to the law and having no legal or constitutional authority to present the same. The question was reserved for the consideration of the full court, which thereupon decided that the Queen could not constitutionally appoint an Attorney-General *ad interim* and granted the motion

to quash.   We need not set forth all the circumstances under which that decision was rendered, some of which appear from the decision itself and others of which do not.   Nor need we decide whether that case is distinguishable from this on principle considering its facts, which differ considerably from those in this case, or the time or manner in which the question was raised.   It is sufficient to say that the court did not consider the question whether the officer was a *de facto* officer nor was that question suggested to the court, so far as appears.   The court considered merely whether the officer was one *de jure* or not.   If it can be said that the court decided that he was not an officer *de facto*, it can be merely on the theory that that finding is involved by way of inference in the ultimate conclusion of the court.   Under such circumstances we cannot regard the decision as obliging us to decide the present case contrary to correct principle and the great weight of authority in other jurisdictions.

Finally, what was the effect of annexation so far as this case is concerned?   The Joint Resolution of Annexation (July 7, 1898), provided that, "The municipal legislation of the Hawaiian Islands  \*  \*  \*  not inconsistent with this joint resolution \*  \*  \*  shall remain in force until the Congress of the United States shall otherwise determine," and that, "Until Congress shall provide for the government of such islands all the civil, judicial, and military powers exercised by the officers of the existing government in said islands shall be vested in such person or persons and shall be exercised in such a manner as the President of the United States shall direct; and the President shall have power to remove said officers and fill the vacancies so occasioned."   In the exercise of the power thus conferred upon him, the President (July 8, 1898) directed that, "the civil, judicial and military powers in question shall be exercised by the officers of the Republic of Hawaii as it existed just prior to the transfer of sovereignty, subject to his power to remove such officers and to fill the vacancies."   Afterwards to the question, "Should not vacancies occurring in the offices of Hawaiian Government officials, by expiration of term, death or resignation, be filled by

appointment as provided by the laws of Hawaii?" propounded by the Hawaiian Government, the Secretary of State replied by telegram: "Vacancies in appointive office will as a rule be filled as heretofore, but an oath of allegiance to the United States will be required." This last instruction applied to vacancies only and so does not affect the present case except in so far as it tends to show a general intention that the government should proceed without interruption so far as possible under the Hawaiian constitution and laws.

The contention is that the Joint Resolution transferred all power of appointment to the President of the United States and so repealed the Hawaiian constitution and laws in so far as they gave to any one the power to create or fill a judicial office, and that, even conceding that there were vacancies in the present case, and that Act 67 of 1898 was constitutional, there could be no color in the appointment of any one to a judicial office unless the appointment came from the President of the United States. It would seem from the authorities that color of appointment or of authority to appoint is not necessary to constitute one a *de facto* officer, although it may in certain cases add much to other evidence tending to show one to be a *de facto* officer. But aside from that, it is clear that the Joint Resolution continued in force the judicial powers of Circuit Judges and also the President's civil power of appointment, subject to the superior power of the President of the United States in that respect, or at least that the latter's direction that the civil powers exercised by the officers of the existing government in these islands should be exercised by the officers of the Republic of Hawaii as it existed just prior to the transfer of sovereignty, continued in the President of Hawaii such powers of appointment as he had previously, subject of course to the superior power of the President of the United States. Such direction by the President of the United States was clearly within the power conferred upon him by the Joint Resolution. It does not fall within the doctrine that delegated power cannot be delegated. But after all, what difference does it make that the President of Hawaii lacked the power to make

the appointments in question after annexation if he lacked it also before annexation?  In either case he was without the power; and the validity of the acts of the appointees is unassailable now and here, not because the appointments were valid, but because, assuming that the President did not have even color of authority to appoint them, they were nevertheless *de facto* officers in possession of *de jure* offices and performing the functions of those offices and, we may add, with the acquiescence of all concerned in their supposed right to hold those offices and perform those functions.

The motion to vacate the decree is denied.

*Smith & Lewis* for libellants.

*Kinney, Ballou & McClanahan* for libellee.

### CONCURRING OPINION BY GALBRAITH, J.

I concur in the conclusion announced by the majority of the court, i. e., that the motion ought to be denied.  Whatever my opinion might have been on the questions raised by the motion, had it been presented in due season, I do not feel called upon to express it now.  Whatever virtue there may be in the libellee's contention, it seems to me that it has no right to urge them at this time or to ask the court to pass upon them in this proceeding.  The decree sought to be vacated is the decree of this court rendered, after an exhaustive investigation of the cause on its merits, at the September, 1900, term, and entered on November 13, 1900.  An appeal from this decree to the Circuit Court of Appeals, Ninth Circuit, was sought and denied by that court (108 Fed. 113).  This action was affirmed by the Supreme Court of the United States (*Wilder's S. S. Co.*, 22 Sup. Ct. R. 225).  I do not think that the court ought to entertain the motion at this late day, particularly since all the facts relied on were known to libellee at the original hearing of the case in this court on appeal from the decree of the Judge of the First Circuit.  The motion, no matter what it is called, is in reality and effect a petition for a rehearing, presented long after the expiration of the term at

which the decree was rendered and after an effort to appeal had failed. Rule 11 of this court provides that "a petition for rehearing may be presented only within thirty days after the filing of the opinion." The opinion was filed in this court November 7, 1900. The motion was filed January 31, 1902.

The questions raised by the motion and discussed by the majority of the court, however interesting, are, it seems to me, more academic than practical. No reason has been given to justify the inference that if the motion were granted and a new trial ordered, it would or ought to result in a decree differing in any material respect from that sought to be set aside. The facts in this case have been passed upon by four different courts and practically the same conclusion reached by each. Public policy and the interest of justice demand that there should be an end to litigation.