IN THE MATTER OF THE APPLICATION OF ALFRED
W. CARTER, GUARDIAN OF THE PROPERTY OF
ANNIE T. K. PARKER, A MINOR, FOR A WRIT
OF PROHIBITION AGAINST THE HONORABLE
GEORGE D. GEAR, SECOND JUDGE OF THE CIR-
CUIT COURT OF THE FIRST CIRCUIT, AT CHAM-
BERS, AND J. S. LOW, NEXT FRIEND OF ANNIE
T. K. PARKER, A MINOR.

ORIGINAL.

ARGUED OCTOBER 20-21, 1904.    DECIDED NOVEMBER 7, 1904.

FREAR, C.J., HATCH, J., AND CIRCUIT JUDGE DE BOLT IN
PLACE OF HARTWELL, J.

CIRCUIT JUDGES AT CHAMBERS—*independent jurisdiction in equity and
probate matters, not impliedly repealed by Organic Act.*

The equity and probate jurisdiction of circuit judges at chambers
existing under the Hawaiian constitution, which vested the judicial
power in one supreme court and such inferior courts as the legis-
lature might establish, was not impliedly repealed by the provision
of the Organic Act which vested such power in one supreme court,
circuit courts, and such inferior courts as the legislature might
establish. Although the powers of judges at chambers are usually
limited to matters incidental or ancillary to causes pending in
court, judges at chambers, so-called, have in Hawaii not only such
incidental powers but also independent jurisdiction in equity and
probate matters. But such independent jurisdiction is exercised
by such judges as courts of record, and not privately or summarily,
—the phrase "circuit judge at chambers" being in such case
merely a method of describing such courts.

CONSTRUCTION—*rules of, applied.*

> In construing a doubtful provision of an act, other provisions, the act as a whole, and its reason and spirit, may be considered; also the circumstances under which it was adopted, the history which preceded it, and the consequences of proposed constructions; weight may be given to long continued, unquestioned and contemporaneous construction; if the provision is borrowed, the construction placed upon it previously may be considered; repeals by implication are not favored; *expressio unius est exclusio alterius.*

### OPINION OF THE COURT BY FREAR, C.J.

This is an application for a writ of prohibition to restrain further proceedings in a matter instituted by the respondent J. S. Low, as next friend of Annie T. K. Parker, a minor, before the respondent the second judge of the circuit court of the first circuit, at chambers, for the removal of the petitioner as guardian of the property of the said Annie T. K. Parker. That matter was brought and is pending before the circuit judge at chambers under the provisions of Sections 37 and 38 of Chapter 57 of the Laws of 1892, commonly known as the Judiciary Act (C. L., Sections 1145, 1146), as amended by Sections 11 and 12 of Act 32 of the Laws of 1903; and also Sections 1343-1395 of the Civil Code of 1859, (Civil Laws, Ch. 126), as amended by Act 16 of the Laws of 1903,—these being the principal provisions that purport, among other things, to confer and to some extent define the jurisdiction of circuit judges at chambers in guardianship matters. The contention is that these provisions are void as being in conflict with Section 81 of the Organic Act, which reads as follows:

"Sec. 81. That the judicial power of the Territory shall be vested in one supreme court, circuit courts, and in such inferior courts as the legislature may from time to time establish. And until the legislature shall otherwise provide, the laws of Hawaii heretofore in force concerning the several courts and their jurisdiction and procedure shall continue in force except as herein otherwise provided."

It is argued that this section vests all the judicial power of

the Territory in certain courts and that therefore none can be
vested by Hawaiian laws, whether old or new, in circuit judges
at chambers; that the powers of a judge at chambers are limited
to matters incidental or ancillary to causes pending in court and
do not extend to the hearing and determination of matters of
a judicial nature that are independent of any cause pending in
court. A number of cases are cited in support of this view,
particularly *Ballard v. Carr,* 48 Cal. 70; *Risser v. Hoyt,* 53
Mich. 185; *Toledo A. A. & G. T. Ry. v. Dunlap,* 47 Mich. 456;
*Rowe v. Rowe,* 28 Mich. 353; *P. Ft. W. & C. K. W. Co. v.
Hurd,* 17 Oh. St. 144; *State v. Woodson,* 161 Mo. 444;
*McKnight v. James,* 155 U. S. 685. These cases differ to a
greater or less extent from the present case in the language of
the constitutional and statutory provisions involved and the
circumstances under which those provisions were adopted as well
as under which those cases arose, and there are other cases that
tend the other way; and yet the cases cited contain reasoning of
great force in support of the petitioner's contention.

The present case, however, can not be decided solely as if
there were a definite constitutional or organic provision intended
to control the organization of a judicial system in the future
where none existed previously, or to be chiefly declarative of a
different system previously existing, or to introduce radical
changes in a previously existing system. No doubt the Organic
Act may be regarded as in the nature of a constitution from the
standpoint of the Territory, and Hawaiian laws relating to the
judiciary, whether previously existing or subsequently enacted,
cannot stand if in conflict with the provisions of that act (see
23 Op's. Att'y. Gen'l. 539); and the circuit courts mentioned in
Section 81 of that act may, perhaps, be regarded, from the terri-
torial standpoint, as constitutional courts. See *Hind v. Wilder's
S. Co.,* 14 Haw. 222; *Ex parte Smith,* 14 Haw. 269. Yet even
a constitutional provision must be construed in connection with
other provisions of the instrument, and also in the light of the
circumstances under which it was adopted and the history which
preceded it, and the natural consequences of a proposed construc-

tion,—with a view to ascertaining the intention of its framers. This rule is especially applicable in the case of an act which, as in the case of the Organic Act now in question (a legislative act from the standpoint of the body that enacted it), contains many different provisions bearing upon the same subjects; which was enacted with reference to a highly developed system of government already existing; and which manifests upon its face from beginning to end an intention to continue that system except as changed in certain respects by that act.  See particularly Sections 1, 6-10, 64, 68, 71-79, 81, 83, 91.  Many other sections which do not on their face show a general intent to continue the Hawaiian laws in force were themselves taken in whole or in part from the Hawaiian Constitution of 1894, as, for examples, Sections 11-54, 57-62, 80, 82, 84, 99.  A striking illustration of the application of these rules of construction is found in the case of *Hawaii v. Mankichi,* 190 U. S. 197, in which the literal meaning of a provision of the Joint Resolution of annexation, which in a sense was the constitution of Hawaii for about two years, was held to be controlled by the general intent shown by the resolution as a whole, by the circumstances under which it was adopted, the past history of Hawaii and her judicial system, and the disastrous consequences that would result from a narrower construction.  It is also a general rule of construction that when one state borrows a law from another state it also borrows the construction previously put upon it by the first state.  Congress in the Organic Act not only adopted in general terms the laws of Hawaii, including those relative to the judiciary department, with certain exceptions (see 23 Op's. Att'y Gen'l, 539), but it borrowed the provisions of the Organic Act itself relative to the fundamentals of the judiciary mainly from the Hawaiian Constitution of 1894, which were also in the Hawaiian Constitutions of 1852, 1864 and 1887.  Compare Sections 81, 82 and 84 of the Organic Act with Articles 82, 83 and 89 of the Constitution of 1894.  The division of jurisdiction between courts and judges at chambers, so-called, has

existed, without its validity being questioned, under all of these constitutions.

This is a question of construction. It is not inherently impossible to confer independent jurisdiction of cases not requiring trial by jury upon judges at chambers. That may be done by constitutional provision or by statute in the absence of constitutional restriction. See *Wilcox v. Wilcox,* 14 N. Y. 577 ; *Brewster v. Hartley,* 37 Cal. 15 ; *Stewart v. Daggy,* 13 Neb. 290. Nor would it seem inappropriate where, as in Hawaii, the jurisdiction so conferred has as a rule been of an equitable as distinguished from a legal nature—such as was formerly exercised in England by the equity, ecclesiastical and admiralty courts—and has been exercised with the formality and publicity usually obtaining in courts of law. The words "at chambers," indeed, may be used, and have been used here, in various senses. They may mean the judge's lodgings or private rooms or they may mean a room set apart, like an ordinary court room, for hearing matters without a jury. See *Com. v. McLaughlin,* 122 Mass. 449. Likewise, proceedings at chambers may imply a certain degree of informality; they may be more or less summary and before a judge acting privately without a clerk; or, they may be formal, instituted by petition and process, with service of summons as in cases before courts of law, and heard in a public court room by the judge with clerk, bailiff, and all the elements that are usually supposed to make up a court of record. Even the word "court" is subject to more or less confusion. It is sometimes used to denote all that makes up the court, and sometimes to denote merely the presiding judge of the court. Again, in order to be a court, a body need not have a particular name. It may be designated a "circuit court" or it may simply be called a court with jurisdiction to hear and determine certain classes of cases. "District courts" and "district magistrates" are used interchangeably in our statutes to denote the same court. It is a court, though not of record. Commissioners of private ways and water rights under our statutes hold courts without names. A court is a political being. It is incorporeal. It may

be described or designated in various ways—even without the use of the word "court" at all.

The words "court" and "chambers" have been used in various senses in Hawaii for more than half a century, but with recognized meanings, whether in statutes or judicial decisions, according to the circumstances. Powers at chambers of the incidental or ancillary sort have been conferred, but the words "at chambers" and other words deemed equivalent have also been used to signify certain distinctions in independent matters. The superior courts of record have borne different names from time to time, but superior jurisdiction has always been divided between the courts under their respective names and the judges of such courts at chambers. This has been a convenient way of indicating certain distinctions. The distinction is in general that between law and equity. The court, under its proper name, as, for instance, the "circuit court," sits at regular terms, with a jury, in law cases, which go to a higher court by bill of exceptions. The "circuit judge at chambers," or the "circuit judge," the "judge of a court of record at chambers," the "circuit court at chambers," the "probate court," the "probate judge at chambers," etc., as he is variously called, sits continuously, without a jury, in equity and probate, and formerly in admiralty and bankruptcy cases, which go to a higher court by general appeal. There is a court, without a proper name, of the circuit judge. It has often been referred to in both the statutes and judicial decisions as the court of equity or the court of probate, etc. Moreover, it is a court of record, with clerk, bailiff, etc. It usually sits in the public court room of the circuit court. It sometimes sits in the judge's room or chambers adjoining, as a matter of convenience. The court also, as distinguished from the judge or the judge at chambers, has sat in the judge's chambers in matters not requiring a jury, or jury waived, or even with a jury, as a matter of convenience or necessity, though naturally not often, at least with a jury, for it is not convenient to have a jury in chambers. For the last twelve years cases could be brought to this court by writ of error as well as by appeal

from circuit judges at chambers just as they may be brought by writ of error as well as by exceptions from circuit courts, and that is still the case.

The jurisdiction and procedure of the courts and the judges at chambers is not all defined by statute. Much of it is covered by statute only in a very general way. For instance, judges at chambers are given jurisdiction in equity in general terms—which means that they have such equitable jurisdiction as has been exercised in chancery in England and the equity courts in America. Even the act of 1878, which enumerates many subjects of equity jurisdiction, is not exclusive, although it was taken from the Massachusetts statute, which is there held exclusive. See *Dole v. Gear*, 14 Haw. 560. Similarly as to guardianship matters. See *Hoare v. Allen*, 13 Haw. 262. Much, as to jurisdiction and procedure, is governed by what may be considered Hawaiian common law,—that has grown up without the aid of statute or has been built upon statutes by inference and been recognized by bench and bar and has to some extent been assumed in the enactment of statutes. In fact, the judiciary has developed here, especially in its earlier period, much as it did in early English history, gradually, and largely without the aid of statute. There was a gradual separation of judicial from executive and legislative functions, a gradual organization of a judicial system, introduction of trial by jury, separation of law and equity, separation of civil and criminal matters at law, and of equity, probate and admiralty matters at chambers, and of the functions of the judge and the jury, and a gradual development in forms of pleading and practice. This began long before the first constitution, that of 1840, the provisions of which were somewhat crude and meager and but little suggestive of the system, especially so far as the superior courts of record—the governors' courts—were concerned, that then existed and rapidly developed for some years afterwards. Prior to the Constitution of 1840, there were scarcely any statutory provisions relative to the judiciary. After that until the act of 1847, organizing the judiciary, there was little more than the act of

1842 (Blue Book, p. 170), which related chiefly to juries and began: "There are two distinct kinds of courts. One kind where the judges or tax officers decide the case by themselves, and the other kind where they can not act by themselves, but certain other persons must be associated with them. These persons who are associated with them shall constitute the jury." The first comprehensive act covering the judicial system with any degree of completeness was that of 1847. That is largely the basis, directly or indirectly, of all subsequent comprehensive acts relative to the judiciary. It divided jurisdiction between certain named courts and judges at chambers. Then came the Constitution of 1852, which has been the basis of all subsequent constitutions. It provided in Article 81: "The Judicial Power of the Kingdom shall be vested in one Supreme Court, and in such inferior courts as the Legislature may from time to time establish." This was followed the next year by the second comprehensive judiciary act, drafted, we believe, by the same person who drafted the constitution, Chief Justice Lee. The main object of this act was to conform the laws to the change in the supreme court. The former supreme court, consisting of the king, premier and four chiefs, whose functions had practically ceased, was dropped altogether, and what had previously been the superior court of law and equity in name, but had already become practically the superme court as well in reality, was made such in name also. This act also preserves the distinction between the courts and the judges at chambers, in matters of jurisdiction, procedure, methods of appeal, etc. Next came the Civil Code of 1859, embodying, in sections 815-1282, a codification of the laws relating to the judiciary, namely, the acts of 1847 and 1852, and a number of subsequent acts of minor importance, but preserving the distinction between the courts and the judges at chambers in language for the most part still in force in the statute books. The Constitution of 1864 followed, copying for the most part the provisions of that of 1852, including the provision now in question, which was Article 64 of that constitution. The Constitution of 1887 was copied mostly from that

of 1864, and contains the same Article 64. Meanwhile a number of more or less important acts were passed more fully defining or altering in detail the jurisdiction and procedure, that already for the most part existed, in regard to particular subjects. These are set forth in the compilations of 1884 and 1897, which were not enacted. The judiciary act of 1892 made some important changes in the organization of the judiciary and the jurisdiction of the courts but preserved the same distinction between the courts and the judges at chambers. The Constitution of 1894 copied the provisions of that of 1864 relating to the judiciary with some changes not material to the questions now under consideration. The provision now particularly in question appears as Article 82. In view of the fact that constitution after constitution and statute after statute has been adopted by constitutional convention and legislatures and accepted without question by bench and bar and the public throughout the sixty-four years of organized constitutional government in Hawaii, recognizing the constitutionality and propriety of provisions such as those now called in question, coupled with the fact that the "judges at chambers" in the exercise of jurisdiction in equity and probate matters are and have been regarded as courts, and not only that, but courts of record, it would be preposterous to hold that the statutes conferring or defining such jurisdiction of judges at chambers would be void under Hawaiian constitutions or immediately prior to the enactment of the Organic Act.

Under the constitutions of Hawaii, the courts of the circuit judges at chambers as well as the circuit courts, have been established by the legislatures as inferior courts, that is, inferior to the supreme court, in the exercise of the power to establish such courts under the constitutional provision in question. What the relation between a circuit court and the court of a circuit judge at chambers is, is an interesting question that was much argued in this case but need not be decided. In some jurisdictions law and equity are administered by distinct courts as well as by distinct forms of procedure; in others by the same courts though by distinct forms of procedure; in still others by the

same court through the same forms of procedure. Whether the circuit court and the court of the circuit judge at chambers should be regarded as one, that is, whether they should be considered merely as the law and equity sides of the same court, or whether they should be considered as distinct courts, though presided over by the same judges, is a question upon each side of which much can be said. Many statutory provisions as well as many decisions may be regarded as pointing in each direction and yet are not necessarily inconsistent with either theory. Among the cases see *Kendall v. Holloway,* 16 Haw. 45; *Kala v. Mills,* 15 Haw. 422; *Hind v. Wilder's S. Co.,* 14 Haw. 215, 223; *Silva v. Souza,* 14 Haw. 46; *Willard v. Vincent,* 13 Haw. 237; *Kona Coffee Co. v. Circuit Court,* 10 Haw. 571; *Est. of Metcalf,* 3 Haw. 614. A discussion of the numerous statutes and decisions would be too lengthy. Whether the court of the judge at chambers is the same as the circuit court or a different court, it is a court, and it is a court of record, and it and its predecessors have existed unquestioned for more than fifty years.

The question is not merely whether Congress intended by Section 81 of the Organic Act to prohibit the creation of such a court in the future but whether it intended to abrogate such courts already existing. That section is borrowed with modifications from the provision above quoted found in the last four Hawaiian constitutions, under which such courts must be held, under the rule of long continued and unquestioned as well as contemporary construction, not to mention other rules, to have been legally constituted. If no modifications had been made in this borrowed section, could we hesitate to hold that Congress did not intend that it should mean something so radically different from what it has been construed for half a century to mean, or that Congress did not intend by adopting the same provision to repeal by implication what had become so thoroughly established under it? Do the modifications require a different construction? The only modification in the main provision of this section consists in the insertion of the words "circuit courts." It is contended that this modification in itself shows an intention to introduce

a change in the judicial system of Hawaii. That is not a neces-sary inference. If we could with propriety look to the reports in the Congressional Record of the reasons given for inserting these words by way of amendment on the floor of Congress, we should find it to be an erroneous inference. The insertion of these words would naturally, in view of the fact that there were already circuit courts here, be considered as preservative rather than destructive. Those words, of course, mean such circuit courts as were already here. Otherwise there would be nothing to indicate what their nature was to be, except that they should be "circuit" courts—which gives no clue to their jurisdiction as respects either subject matter or territory. The continuation of Hawaiian laws relative to the judiciary also shows that the existing circuit courts were meant. Congress did not define the jurisdiction of such courts except by reference to the laws of Hawaii. The apparent object of inserting the words "circuit courts" was to insure a continuance of those courts rather than the abrogation of other courts, and the reason why it was thought best to insert these words for that purpose may have been the possibility of doubt as to whether such courts, being courts of record of general jurisdiction, would be included under the words "inferior courts." Several reasons may easily be imagined as likely to suggest the advisability of inserting these words. In the nature of things there might be courts of circuit judges at chambers consistently with the presence of the words "circuit courts" in this proivsion, as well as there could be courts of judges at chambers under the original provision in the Hawaiian constitution, when there were courts of the justices of the supreme court at chambers, during the period when they had original as well as appellate jurisdiction, notwithstanding the words "supreme *court*" in the constitutional provision, or when there were courts of circuit judges at chambers notwith-standing the words "inferior *courts.*" Indeed, if we must infer an intention to make radical changes by the introduction of these words, we may as well infer that Congress meant "circuit" courts strictly speaking, that is, courts that travel about the cir-

cuit, and so to abrogate the existing circuit courts which had become fixed although they retained the name that they had years ago when they did travel.

But it is contended that the remainder of the section shows that a change was intended. This, to repeat it, reads as follows: "And until the legislature shall otherwise provide, the laws of Hawaii heretofore in force concerning the several courts. and their jurisdiction and procedure shall continue in force except as herein otherwise provided." The argument is that. "herein" refers to this section and not to the entire act, and that, since the insertion of the words "circuit courts" is the only change made, the phrase *"except* as herein *otherwise* provided" must show that a change was intended in the classes of courts. It is clear, however, that "herein" refers to the entire act, and therefore, since a number of changes in the judiciary are made by other sections (e. g., Secs. 7, 83, 86), the phrase in question is fully explained by reference to them. "Herein" may refer to the act as well as to the section. It must be held to refer to the act or else this section would be in conflict with the other sections that make changes in the laws relative to the judiciary. Moreover, the same phrase "except as herein otherwise provided" is found in other sections where it must refer to the whole act. See Secs. 5, 12, 35, 48.

The latter portion of Section 81, indeed, far from showing an intention to repeal, shows a general intention to continue in force the laws "heretofore in force concerning the several courts. and their jurisdiction and procedure." But it is suggested that the laws conferring jurisdiction on judges at chambers were void under the Hawaiian constitutions also, and so were not "heretofore in force." This argument has already been practically disposed of. It is further argued that even if the old laws. were continued in force, this would not affect the argument that the new laws, namely, the amendments of 1903, above referred to, were void. But (aside from the more reasonable view that future amendments might well be made as to details along lines consistent in principle with the old laws, and the fact that the

amendments in question did not affect the old laws materially so far as the questions now before us are concerned), even if the new laws were void, the old laws would remain in force and they cover the ground. It is contended, however, on the other hand, that the old laws were to continue only "until the legislature shall otherwise provide," and that, since the legislature has otherwise provided, namely, in the amendments referred to, the old laws have ceased to be operative. But, as we have seen, the legislature has not otherwise provided except in certain particulars—which do not go to the extent of materially affecting the general jurisdiction of circuit judges in guardianship matters. Moreover, if the new laws are valid, they are sufficient in themselves without the old laws; while, if they are invalid, the legislature has not otherwise provided and the old laws remain and are sufficient in themselves.

Thus, not only is there nothing in Section 81 that requires us to hold that Congress intended, by the insertion of the words "circuit courts," to effect the important change contended for—a change by mere vague implication that would abrogate in toto the courts having equity and probate jurisdiction, but there is much in this section to indicate the contrary. This different intention is strongly sustained by other sections of the act. Section 83, for instance, shows a general intent in this direction by providing "that the laws of Hawaii relative to the judiciary department, including civil and criminal procedure, except as amended by this act, are continued in force," etc., and then making certain specific changes, but not in respect to the jurisdiction or powers of judges at chambers. Section 7 expressly repeals many laws relating to the judiciary, such as that conferring upon circuit judges jurisdiction in bankruptcy. It even expressly repeals the "first subdivision of section eleven hundred and forty-five," (relating to admiralty jurisdiction) of the Civil Laws,—the section that is now in question and that defines in twelve subdivisions the jurisdiction of circuit judges at chambers, but does not mention the subdivisions that confer upon such judges equity and probate jurisdiction. *Expressio unius est exclusio alterius. Expressum facit cessare tacitum.*

Section 10, entitled "Construction of existing statutes," provides "that all rights of action, suits at law and in equity, prosecutions, and judgments existing prior to the taking effect of this act shall continue to be as effectual as if this act had not been passed; * * * all actions at law, *suits in equity, and other proceedings* then pending in the courts of the Republic of Hawaii shall be carried on to final judgment and execution in the *corresponding courts* of the Territory of Hawaii." This permitted the retention by circuit judges at chambers of admiralty cases then pending, although all admiralty jurisdiction over new cases was transferred from them to the United States district court for Hawaii. *Ex p. Wilder's S. Co.,* 183 U. S. 545; *Wilder's S. Co. v. Hind,* 108 Fed. 113; *Hind v. Wilder's S. Co.,* 13 Haw. 174. It equally authorized the retention by circuit judges at chambers of jurisdiction in equity and probate matters then pending. Some such matters, especially in probate, might not be finally disposed of for several years, during all of which time the circuit judges at chambers would continue to exercise such jurisdiction. This, it is true, is in the nature of an interregnum clause. But it provides for the continuation of such suits and proceedings in the *corresponding* courts of the Territory, thus implying that there were to be such corresponding courts. It was a temporary provision for pending cases, not temporary for existing courts; it provided for the completion of all pending cases, whether of kinds the jurisdiction over which was to remain or be taken away,—but in the corresponding courts, which were to continue for new as well as for pending cases. It was not contemplated that such cases should be transferred from circuit judges at chambers to circuit courts; nor is there any indication of an intention to continue the courts of the circuit judges at chambers temporarily only.

The permanent writ is denied and the temporary writ dissolved.

*Ballou & Marx; Kinney, McClanahan & Cooper;* and *Robertson & Wilder* for petitioner.

*J. A. Magoon* and *J. Lightfoot* for respondent.