W. O. SMITH and others *vs.* L. AHOLO, Minister. of the Interior.

*In Re* R. J. CREIGHTON, CONTEMPT OF COURT.

APRIL TERM, 1887.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ.    FORNAN-
DER, J., absent.

Publications tending to affect, hinder or obstruct the administration
of justice, while it is in process of administration, are punishable
as contempts.   The publication of the contents of a bill in equity,
held contempt, as calculated to prejudice the public concerning
the merits of the case then pending.

OPINION OF THE COURT, BY JUDD, C.J.

At the instance of L. Aholo, Minister of Interior, respondent
in a suit then pending in the Supreme Court, wherein W. O.
Smith and others were plaintiffs, the Court issued a rule citing
R. J. Creighton, as editor of the *Pacific Commercial Advertiser*
newspaper, to appear and show cause why he should not be
adjudged guilty of a contempt of Court in having printed and
published in said newspaper, in its issue of the 19th April, 1887,
an abstract of the bill in equity, as follows:

" INJUNCTION

*Prayed for against Minister Aholo.—A Land Transaction*
*Ventilated.*

" In the Supreme Court, yesterday, a petition was filed by W.
O. Smith, L. A. Thurston, W. A. Kinney and M. de Gonveia
against L. Aholo, Minister of Interior.   The petition states that
on the second day of August, 1886, one W. M. Gibson, then acting
as Minister of the Interior of the Hawaiian Kingdom, illegally,
secretly and fraudulently, and without advertisement as required
by law, executed an illegal and fraudulent instrument, pur-
porting to be a lease to His Majesty Kalakaua of certain lands

belonging to the Hawaiian Government, situate in the district of Kona, Hawaii, viz.: of the lands of Kckio 2, Maniowa, Mahaiola, Kaulana, Awalua, Puukala, Makaula, Kalaoa 1, 2, 3, 4 and 5, Kealakehe and Kahanaiki, containing an area of about thirteen thousand acres. That the rent received in said lease is only $100 per annum, which is wholly inadequate and insufficient rent for said lands. That the term of said lease is twenty years. That the said lands are, and at the time of making said lease were, worth not less than $5000. That said lease is on file in the Interior Office. That your petitioners are informed and believe, and upon such information and belief aver, that His Majesty Kalakaua has offered or caused to be offered to L. Aholo, now Minister of Interior for the Hawaiian Kingdom, the sum of $500 for the purchase of all said lands as a whole. That said L. Aholo has, in pursuance of said offer, caused the lands enumerated in said lease to be advertised in the *Government Gazette* for sale, and intends to sell the same upon the 25th day of April, 1887, at an upset price of $500 for the said lands as a whole. That said L. Aholo well knows that said lease was executed secretly, illegally and fraudulently, as aforesaid. That said lands are separate and distinct from one another. That portions of said lands are suitable for settlement under the 'Homestead Act.' That by reason of said condition imposed by said L. Aholo upon said proposed sale, making the same subject to said illegal and fraudulent lease, His Majesty Kalakaua, and those acting for him and in his interest, will be improperly and wrongfully placed in a position much more favorable for the purpose of purchasing said lands than other intending purchasers, and intending bidders and purchasers will by reason thereof be and are prevented from bidding for or buying said land, and that the same will therefore be sold for much less than their real value, thereby causing great and irreparable injury and loss to the public and to your petitioners as taxpayers. Wherefore your petitioners pray that said L. Aholo may be summoned to appear and answer the bill of complaint, and that an injunction may forthwith issue from this Court

enjoining and restraining the said L. Aholo from selling or disposing of said lands or either of them, subject to said lease and in the manner set forth in said advertisement as aforesaid, until the further order of the Court; and that after a full hearing, such injunction may be made perpetual.

" Mr. Justice Preston has appointed Thursday, April 21st, at 10 o'clock A. M., as the time for the petition to be heard, and for defendant to show cause why the injunction therein prayed for should not issue."

.BY THE COURT.

We had occasion, at the January term, 1887, of this Court, in the case of the *Hawaiian Gazette, ante,* page 31, to say that such publications as appear to have a prejudicial effect upon the rights of parties in cases pending in the Courts, were punishable as constructive contempts of Court.

Bishop, in Criminal Law, Section 216, says: " According to the general doctrine, any publication, whether by parties or strangers, which concerns a case pending in Court, and has a tendency to prejudice the public concerning its merits and to corrupt the administration of justice, or which reflects upon the tribunal or its proceedings, or on the parties, the jurors, the witnesses or the counsel, may be visited as a contempt."

The publication in question comes within the principle laid down in the *Gazette* case, and is fully sustained by authority. *Stuart vs. The People,* 3 Scam., 395; *The People vs. Wilson,* 64 Ill., 196; *Tenny's Case,* 23 N. H., 162; *Re Cheltenham and Swansea R. R. Carriage and Wagon Co.,* 8 L. R. Eq. Cas., 580.

This last case is on all fours with the one at bar. The publication *in extenso* of a bill in equity containing grave charges of fraudulent conduct on the part of the directors of the respondent company was there held to be punishable as a contempt.

We concede most fully the right of citizens and the press to comment upon and criticise freely in temperate language, and without impugning motives, the judgments of the Court after they have been rendered; but publications which tend to affect,

hinder or obstruct the administration of justice, while it is in process of administration, are reprehensible. We quote the following from Odgers on Libel and Slander, Section 44: "The administration of the law, the verdict of juries, the conduct of suitors and their witnesses, are all matters of lawful comment as soon as the trial is over. Any comment pending action is a contempt of Court, by whomsoever made; it is especially so where the comment is supplied by one of the litigants, or his solicitor or counsel."

It cannot be said that this publication was an attempt to influence the mind of the Justice who was to hear the cause. He must have read the petition before granting the interlocutory order prayed for. The publication could, therefore, have no effect upon him. But it is calculated to prejudice the public concerning the merits of the case then pending, and clearly falls within the rule.

But the publication of the bill was not accompanied with comments, and the respondent says he did not intend any disrespect or contempt of the Court, and believed that the records of the Court were public and open to the inspection of all persons, and published the abstract of the bill on file merely as matter of news.

The records of our Court are open to those of the public who seek for information therefrom respecting their own concerns. They are not open to the public to the extent that everything on file may be published without leave of the Court.

But the case before us is not a flagrant one, and we think the interests of justice will be subserved by ordering the respondent to pay costs.

*Ashford & Ashford*, for the Rule.

*F. M. Hatch*, for respondent.