## THE KING *vs.* LEE FOOK.

SPECIAL TERM, FEBRUARY, 1888.

APPLICATION FOR ATTACHMENT AGAINST LUM KUM CHEUNG, CHING CHEUNG PING AND H. M. WHITNEY, FOR CONTEMPT.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

When a person is committed for trial in this Court, the case is at once pending. And it is a contempt of this Court to publish anything tending to prejudice the right of the defendant to a fair and impartial trial.

OPINION OF THE COURT, BY PRESTON, J.    DOLE, J., dissenting.

On the sixth day of January last, Lee Fook was committed for trial at the then next ensuing term of the Supreme Court on

a charge of perjury alleged to have been committed by him in swearing to the truth of certain statements contained in a petition presented by him to the Chief Justice for a writ of *habeas corpus* for the release of certain Chinese women and girls alleged to be unlawfully detained.

On the fourteenth day of January, Lum Kum Cheung published in the *Hawaiian Chinese News*, of which the said Lum Kum Cheung was editor and manager, a proclamation purporting to be issued by a society styled "The United Chinese Society," reflecting upon the said Lee Fook.

This proclamation was also published in the English language in the *Daily Hawaiian Gazette* in its issue of the 18th of January, and in the weekly edition of the *Hawaiian Gazette* of the 24th.

It was charged and admitted that H. M. Whitney, the manager and publisher of the *Gazette*, was instigated by one Ching Cheung Ping to publish the said proclamation.

On the application of Lee Fook an order was made by this Court on the fifteenth day of February for the said Lum Kum Cheung, Ching Cheung Ping and Henry M. Whitney, to show cause why an attachment should not issue against them for contempt of Court in making the publications aforesaid.

The article complained of reads as follows:

"CHINESE FEMALE TRAFFIC—IMPORTANT PROCLAMATION BY THE UNITED CHINESE SOCIETY.

"Below is a translation of posters about town in the Chinese language. The document explains itself:

"This is to notify that many decent and respectable Chinese women and girls are kidnapped in Canton, Hongkong, and other places for the purpose of being shipped to California for immoral purposes, and complaints have been made to the Viceroy at Canton, China, by the parents or guardians, and the Viceroy has examined into these complaints and sent a cablegram to the Commissioner, Cheung, at Washington, directing

him to report to the Consul-General at San Francisco, and to order that a strict investigation must be made as each steamer arrives in San Francisco from Hongkong.

"In the early days of the ninth moon a cablegram from the Chung Wah Hospital, Hongkong, was received by the Consul-General, Leung, complaining that plenty of women and girls had been kidnapped on the way to San Francisco. The Belgic, on her arrival at San Francisco, was examined, and it was found that more than fifty women and girls, most of whom had been kidnapped, were on board. The report made asked the authorities to arrest Wong Hung, and these women and girls accused Wong Hung of kidnapping them. He was sentenced to ten years' imprisonment and $2000 fine on being found guilty, and the women and girls were ordered to be returned to the Chung Wah Hospital, Hongkong, requesting them to transfer the women and girls to the Viceroy for investigation of their case.

"These women and girls were shipped from San Francisco to Hongkong on board the San Pablo, which touched at Honolulu on the voyage. Lee Fook, who lives at Honolulu, hearing about these women, and desiring a monopoly to earn money by them, applied to the Supreme Court, making affidavit that Luk Moi was his wife, Cheu Ho his daughter-in-law, and Ah Moi and Hoi Cheu his daughters. He engaged a lawyer to get these women and girls from the vessel, and this was with the view to his making money by their immoral practices.

"This is treating our law with disrespect, and a practice of great cruelty. The members of our society and the Chinese Commercial Agents have performed their duty and endeavored to procure an order to cause these women and girls to proceed on their voyage in order to do as the Viceroy had wished, and thus to permit them to have the happiness of a family gathering. The Chief Justice found no law to prevent these women and girls from landing of their own accord, and they landed. Luk Moi was subsequently, with Lee Fook, charged before the Police Court at Honolulu with perjury. Luk Moi was acquitted and discharged, and Lee Fook was committed for trial at the January term of the Supreme Court.

With regard to Lee Fook's false representation, and his desire to make money in the bad way he tries, it is considered he is no better than the kidnapper, and must be punished for this serious offense. No one can pity such a man. It is said that plenty of people privately help this man with money to carry on his bad conduct. It is the duty of our society to petition the Commissioner at Washington, who will take action and report to the Viceroy, who will do his duty and cause the guilty parties to be punished; but we are afraid that these people who help Lee Fook are perhaps ignorant of the true facts and the law, and we will not petition as we intended. It is therefore hereby made known that if any person or persons help Lee Fook in any way hereafter, the petition will go, with the names of these parties attached, and no excuses made. You are expected to listen to all this, and take care accordingly.

"UNITED CHINESE SOCIETY.

"Dated January, 1887."

Upon the argument it was contended that the mere fact of Lee Fook having been committed for trial did not make his case pending in this Court, and that the publication was made in good faith and without any intention to prejudice the fair trial of the defendant.

We are of opinion that when a person is committed for trial in this Court the case is at once pending in this Court, otherwise it would be impossible for the Crown or the defendant to enforce the attendance of witnesses at the trial by subpœna until an indictment was found, which would in many cases prevent the defendant having his trial for some months.

We are also of opinion that the publication in question is a contempt of this Court, according to its decision in other cases, as tending to prejudice the right of the defendant to a just and impartial decision of his case, and to embarass and obstruct the course of justice.

The respondents having disclaimed any improper motive, and it appearing that the defendant has been discharged by a

demurrer to the indictment being allowed, the Court are not disposed to inflict any punishment upon the respondents, and therefore discharge the order.

*V. V. Ashford*, for Lee Fook.

*A. S. Hartwell*, for respondents.

---

### DISSENTING OPINION OF DOLE, J.

I doubt whether the mere committal of Lee Fook for trial in the Supreme Court gave the Supreme Court jurisdiction over the case. The statute of 1876, on procedure in criminal cases, confers exclusive discretion upon the Attorney-General in regard to persons committed for trial, whether to indict or to discharge them. He takes the place of the grand jury in other judicial systems. Until the Attorney-General has presented an indictment against the accused, the Supreme Court has no authority to take cognizance of the case; it is not a "pending trial" before it, and therefore the publication in question, if objectionable, was not a contempt of this Court. "The word jurisdiction (*jus dicere*) is a term of large and comprehensive import, and embraces every kind of judicial action upon the subject matter, from the finding the indictment to pronouncing the sentence. * * * To have jurisdiction is to have power to inquire into the fact, to apply the law and to declare the punishment in a regular course of judicial proceeding." *Hopkins vs. The Commonwealth*, 3 Metcalf, 462.

The Supreme Court had no authority to try the case of The King *vs.* Lee Fook until an indictment was presented; the publication objected to was made before the presentation of the indictment. Bouvier, in Vol. 1, page 769, of his Law Dictionary, states the same principle: "Jurisdiction of the cause is the power over the subject matter given by the laws of the sovereignty in which the tribunal exists."

The allusion by the majority of the Court to the inconvenience which would be entailed in relation to procuring the

attendance of witnesses, if the rule set forth above should prevail, is rather an argument of expediency than of legal principle, and I cannot see how an inconvenience, however great, can effect the question of what is the law.

For these reasons I am compelled to differ from the majority opinion on the question of jurisdiction, and give as my conclusion that the publication in question is not a contempt of this Court.